Anthony D. Christopher v. Commissioner.
Christopher v. Commissioner
Docket No. 64521.
United States Tax Court
T.C. Memo 1959-116; 1959 Tax Ct. Memo LEXIS 131; 18 T.C.M. (CCH) 521; T.C.M. (RIA) 59116; June 5, 1959
*131 Held, petitioner is not entitled to deductions for payments to his divorced wife under section 23(u), 1939 Code, and section 215(a), 1954 Code. John R. Stivers, Esq., Stenck Building, Memphis, Tenn., for the petitioner. Paul D. Barker, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in income tax for the taxable years *132 1953 and 1954 in the amounts of $515.67 and $563.26, respectively. The question is whether payments to petitioner's divorced wife are deductible under the provisions of sections 23(u) and 215(a), respectively, of the Internal Revenue Codes of 1939 and 1954. Findings of Fact Petitioner filed individual returns for the taxable years in Baltimore with the collector of internal revenue for the district of Maryland. Petitioner is now a Commander in the United States Navy. He entered the Navy in 1941, and was commissioned an Ensign in 1942. He has served in the Navy, as an aviator, since 1941. Petitioner and Madeleine Kehoe were married at Everett, Massachusetts on January 15, 1942. Their children, a daughter and son, were born on December 8, 1945, and January 10, 1947. In 1947, petitioner was stationed in Washington, D.C., and he lived in Washington with his family thereafter until the early part of 1950. In February 1950, Madeleine and the children went to Jacksonville, Florida. Petitioner asserts that Madeleine then intended establishing her residence in Florida for the purpose of obtaining a divorce. Petitioner and Madeleine separated on February 3, 1950, i.e., they ceased *133 living together at that time. Their separation at that time was a de facto separation; they did not enter into a written separation agreement. Madeleine remained in Florida for about 1 year until some time in 1951. While she was there she did not file any proceeding for either a legal separation or a divorce. Madeleine and the children moved to Danvers, Massachusetts in 1951, and they have lived in Massachusetts ever since. Madeleine has not remarried. In the latter part of 1950, petitioner was transferred from Washington, D.C. to the Naval Air Station in Dallas, Texas, and he was stationed there during 1951, 1952, and part of 1953. In October 1953, petitioner was assigned to duty aboard the aircraft carrier U. S. S. Wright and he remained on sea duty during 1954. The U. S. S. Wright was under the Far East Command in 1954, during the Korean War, and during 1954 petitioner was in the Korean combat zone. In 1955, petitioner was stationed at the Naval Air Station in Memphis, Tennessee. In 1952 or 1953, petitioner remarried. His present wife is Larette B. Christopher. In October 1947, prior to the separation, petitioner arranged with a naval disbursing office to have part of his service *134 pay in the amount of $325 paid to Madeleine. This arrangement was made so as to provide a steady allowance for the support of Madeleine and the two children in the event anything should happen to the petitioner in the course of his duties as a Navy pilot. Thereafter, Madeleine received $325 per month continuously out of petitioner's service pay. Such monthly payments were made to her in 1947 and during all of the succeeding years. She still receives such monthly payments. The monthly payments have always been sent to the National Shawmut Bank in Boston for deposit in Madeleine's account, ever since the payments were made in 1947 up to the present. That arrangement was made in 1947 at Madeleine's request. Petitioner has never entered into any written agreement with Madeleine obligating himself to pay her $325 per month. During each of the years 1953 and 1954, Madeleine received the monthly payments from the Navy out of petitioner's service pay in the aggregate amount of $3,900. At all times since Madeleine went to Florida in 1950, including 1953 and 1954 and up to the present, the two children have lived with their mother, in her care and custody. On January 16, 1952, petitioner *135 filed a petition for divorce from Madeleine in the Juvenile Court of Dallas County, Texas. This action was designated, Anthony Domenic Christopher v. Madeleine Kehoe Christopher. In his petition, Christopher stated that he had been a bona fide resident of Texas for more than the preceding 12 months, and of Dallas for more than the preceding 6 months; that he and Madeleine had separated on February 3, 1950; that Madeleine was at the time of the filing of the petition for divorce a resident of Danvers, Massachusetts; and that the children lived with their mother. The grounds for divorce were stated to be cruelty on the part of Madeleine. In the petition for divorce Christopher, the plaintiff, asked for the award of a divorce to him and for award to Madeleine of the care, custody, and control of their two children, with allowance to him of reasonable visits with the children. In the petition for divorce the only references to payments to the defendant, Madeleine, and to the settlement of property rights are as follows: "V. Plaintiff would further show the court that he is aggreeable to the defendant retaining custody of their children, and that he is agreeable to paying child support *136 in whatever amount this court deems adequate and reasonable. "VI. The parties hereto own as community property certain items of household furniture and one automobile. Plaintiff would further show the court that he is agreeable that defendant be given said household furniture as her sole and separate property on the final hearing of this cause and asks that he be awarded the automobile as his separate property." Christopher's petition for divorce was duly served on Madeleine. On either January 22, 1952, or January 3, 1952, Madeleine filed in the Probate Court of Essex County, Massachusetts a petition, dated January 22, 1952, for a decree of separate support for herself and of maintenance of two minor children. This cause is entitled, Madeleine K. Christopher v. Anthony Domenic Christopher. In her petition, Madeleine stated that she was a resident of Danvers, Essex County, and that Christopher was "of" Revere, Suffolk County, Massachusetts; that there were two minor children; and that her husband "fails, without just cause, to furnish suitable support for her and has deserted her; and that she is living apart from her said husband for justifiable cause." Madeleine petitioned the *137 court to make such order as it deemed expedient concerning her support, and the care, custody, and maintenance of the minor children, and pending a hearing on the merits, requested "temporary custody and maintenance for herself and said minor children." Christopher received a copy of this petition. He did not contest Madeleine's action. On February 1, 1952, the Probate Court of Essex County entered a temporary support order in an uncontested proceeding, as follows: "On the within petition, it is ordered that the petitioner Madeleine K. Christopher have the temporary custody and possession of their minor children, Kathleen M. Christopher and John A. Christopher and that the respondent, Anthony Domenic Christopher pay to said petitioner the sum of three hundred twenty-five and 00/100 dollars on each and every month hereafter for her temporary support and that of said minor children until further order of the Court." The above order of the Essex County Probate Court dated February 1, 1952, although a temporary order, has never been rescinded. There never has been entered a permanent order, or decree, of separate support. On February 20, 1952, the Juvenile Court of Dallas County, *138 Texas entered a decree of divorce in the cause filed by Christopher against Madeleine. This was an uncontested divorce. The cause was heard on January 18, 1952; Christopher appeared in person and by his attorney; and Madeleine (the defendant) failed to personally appear and answer in her behalf. The court heard the cause and concluded that Christopher was entitled to a complete and final divorce from Madeleine. The court decreed that the bonds of matrimony be dissolved and a divorce be granted to Christopher. The court's decree provides, further, as follows: "It further appearing to the Court that there were two children born to the plaintiff and defendant during their said marriage, to-wit: Kathleen Marie Christopher, a girl, born on or about December 8, 1945, and a boy, John Anthony Christopher, born on or about January 10, 1947; and the Court having heard the evidence and the surrounding circumstances of said children, and the financial circumstances, character and fitness of the parents and their respective ability to contribute to the support and welfare of said children, and being of the opinion that no custody award should be made of said children in view of the fact that *139 they are living with their Mother, defendant herein, in the State of Massachusetts; "It is ORDERED, ADJUDGED and DECREED that the said Anthony Domenic Christopher, plaintiff herein, shall pay to defendant, Madeleine Kehoe Christopher the sum of $150.00 per month for the support, and maintenance of said children, Kathleen Marie Christopher and John Anthony Christopher, until said children shall each reach the age of sixteen years, or until subsequently changed by further orders of this Court; and no custody award be made; "It also appearing to the Court that plaintiff and defendant own certain community property, consisting principally of household furniture and one automobile, and the Court being of the opinion that having due regard to the rights of each party that the title to the property under the jurisdiction of this Court shall be determined; It is, therefore, ORDERED, ADJUDGED and DECREED that the automobile should be awarded to the plaintiff herein." As is shown above, the Juvenile Court of Dallas County did not make a custody award of the children in view of the fact that they were living with their mother in Massachusetts. This was in accord with Christopher's statement *140 in his petition that he was agreeable to the mother's retaining custody of the children. The court decreed that Christopher should pay Madeleine $150 per month for the support of the two children until they respectively became 16 years old. This was in accord with Christopher's statement in his petition that he was agreeable to pay child support in whatever amount the court should deem adequate and reasonable. The court settled the community property interests of the parties by awarding an automobile to Christopher as his separate property. This was in accord with paragraph VI of Christopher's petition to the court. In his petition to the court in Dallas, Christopher did not petition the court to make any alimony award to Madeleine for her maintenance and support, and Madeleine did not petition the court to do so. The Dallas court did not, in its divorce decree, impose upon Christopher a legal obligation to make periodic payments, or any other payments, to Madeleine subsequent to the date of the decree of divorce. There was no provision in the decree for the payment of alimony to Madeleine. The temporary order of February 1, 1952, of the Probate Court of Essex County, Massachusetts *141 was not a decree of legal separation; it did not effect a legal separation of Madeleine from Christopher; and it did not make any provision with respect to the living apart in the future of Madeleine and Christopher. The monthly payments of $325, or $3,900 per year, which were paid to Madeleine during 1953 and 1954, were paid to her pursuant to petitioner's authorization to a disbursing office of the Navy, which he made in October 1947 and never rescinded, to pay part of his service pay to Madeleine. The payment of $3,900 ( $325 per month) to Madeleine in 1953 and 1954 constituted the total amount of petitioner's payments to her for each year; i.e., he did not make payment of any additional amount to her or the children. In his returns for 1953 and 1954, petitioner deducted $3,900. In the return for 1953, he described the deduction as "separate maintenance." He attached to both returns copies of the Texas divorce decree and of the Massachusetts order for the temporary support of Madeleine and the children. In the return for 1954, petitioner described the deduction as "child support." The respondent disallowed the deduction of $3,900 in each year. He gave the following reason *142 for disallowing the deduction for 1953: "The deduction of $3,900.00 claimed in your return for separate maintenance is disallowed for the reasons that such amount was paid pursuant to a Massachusetts Court order which was not a decree of divorce or of separate maintenance or it was paid pursuant to a decree of divorce subsequently obtained in Texas which supersedes the Massachusetts court order and which makes no provision for support payments to your former wife." Respondent gave the following reason for disallowing the deduction for 1954: "The deduction of $3,900.00 claimed in your return for child support is disallowed for the reason that no such deduction is allowable within the provisions of the Internal Revenue Code of 1954." In the return for 1953, and for 1954, petitioner claimed only one exemption, which was for himself. In the statutory deficiency notice, the respondent allowed petitioner two dependency exemptions of $600, each, for his two minor children for 1953 and 1954. In 1954, $800 of petitioner's Navy pay was received while he was in the Korean, tax-exempt, combat zone. In his return for 1954, petitioner included the $800 in his gross income, and he deducted *143 that amount in another part of the return. The sum of $800 of petitioner's salary was tax exempt. That amount was properly an exclusion from gross income, rather than a deduction. The sum of $150 per month ($1,800 per year), out of the monthly payment of $325 received by Madeleine during 1953 and 1954, was paid by petitioner for the support of his two minor children in discharge of the obligation imposed upon him under the decree of the Juvenile Court of Dallas County entered on February 20, 1952. The balance of the monthly payment received by Madeleine during 1953 and 1954, $175 per month ($2,100 per year), did not represent periodic payments received by her subsequent to the decree of divorce in discharge of a legal obligation which was imposed on her former husband (petitioner) under the decree of divorce; or under a written instrument incident to the divorce; or under a written instrument incident to a decree of legal separation; or under a decree of legal separation. During 1954, while petitioner was on the U. S. S. Wright in the Korean War Zone, he paid a mess bill in the officers' ward room of $40 per month for 10 months, or $400, for which he did not receive any reimbursement. *144 Petitioner properly deducted $400 for such payments in his return for 1954. Opinion HARRON, Judge: The provisions of sections 22(k) and 23(u) of the 1939 Code apply to the taxable year 1953, and those of sections 71 and 215(a) of the 1954 Code apply to the taxable year 1954. The issue presented, which arises under such statutory sections, does not involve any differences in the wording of the applicable provisions of the 1954 Code, and for the purposes of the questions in this case the pertinent parts of the sections of the 1954 Code are substantially the same as the comparable 1939 Code sections. Our conclusion is that no part of the payments made by petitioner to his former wife during the taxable years in the amount of $325 per month, or $3,900 per year, is deductible under sections 23(u), 1939 Code, and 215(a), 1954 Code. The petitioner and Madeleine lived apart beginning in 1950, but there was at no time a written separation agreement, or a legal separation. The temporary order of February 1, 1952, of the Probate Court of Essex County, Massachusetts did not constitute a decree of legal separation, or effect a legal separation. Under that order, petitioner, as Madeleine's *145 then husband, was directed to make support payments, which he was then legally obligated to make because of his marital duties. When the order was issued petitioner had not yet obtained a divorce. The order of the Massachusetts Probate Court was issued upon the ground that Christopher had deserted his wife and, therefore, that she was living apart from him for justifiable cause. The order was a separate support order, only, for which there is statutory authorization under Massachusetts law. See G.L. (Ter. ed.) c. 209, section 32. It is well established under the law of Massachusetts that a separate support order, under the cited statute, does not bring about a change in the status of married parties, or bring about a judicial or legal separation. ; ; . See, also, "The Law of Separate Support in Massachusetts," 15 Boston University Law Review, 59, 61-62 (1935). Since the Massachusetts separate support order was not a decree of legal separation within the meaning of section 22(k), and the corresponding *146 section, section 71 of the 1954 Code, the payments involved here would not be deductible under section 23(u) and 215(a), if that support order alone were involved. See ; and . See, also, , where it was noted that provision for living apart in the future is essential to a legal separation. The order considered here made no provision for living apart in the future. A de facto separation is not a legal separation within the provisions of sections 22(k) and 71. But decision of the issue presented does not depend upon the legal nature of the Massachusetts separate support order. In less than a month after that order was entered, petitioner, in 1952, was granted a divorce in Texas from Madeleine. She received service of the petition for and decree of divorce. Nevertheless, she did not inform the Massachusetts Probate Court that there had been a change in her marital status and that she had been divorced. Had she done so, the temporary order would have been vacated, without doubt. Petitioner makes no contention to the contrary. In fact, the Massachusetts *147 separate support order was legally effective only until February 20, 1952, when the Texas divorce decree was entered. Therefore, in the taxable years 1953 and 1954, the Massachusetts separate support order was a legal nullity. It is so held for the purpose of the issue before us. Our next consideration is of the Texas divorce decree. The divorce decree did not provide for alimony and support payments for Madeleine. It provided only for payments to her of $150 per month for the support of the children. Clearly the payments involved here which petitioner made to Madeleine during the taxable years for her own support, part from that of the children, were not payments by petitioner in discharge of a legal obligation which was imposed on him under a decree of divorce. Therefore, the payments for Madeleine's support do not come within sections 22(k) and 71, unless the payments were made in discharge of a legal obligation incurred by petitioner under a written instrument incident to the Texas divorce. Up to this point, petitioner does not make any argument to the contrary. The crux of petitioner's claim that he is entitled to deduct payments of $175 per month for Madeleine's support is *148 his contention that there was a written instrument entered into before the divorce, which was incident to his divorce which obligated him to make such payments. Petitioner contends first that the Massachusetts separate support order, which remained outstanding in the taxable years, constituted a written agreement which satisfies the statutory specifications. The only merit to this suggestion is its unique originality. Petitioner cites no authority for his unusual theory and does not seriously urge that any can be found. No discussion is needed in support of or explanation for rejecting the suggestion. In the taxable years, the Massachusetts separate support order was a legal nullity. It cannot, by any possible theory, be tacked to or made part of or incident to a divorce decree of a Texas court. Of course, the Massachusetts separate support order was not in any respect a written instrument signed or agreed to by petitioner. This theory of petitioner is totally without merit. Petitioner next contends that there are letters from him to Madeleine, which were written prior to his divorce, which constitute a written agreement in which he agreed to make payments to her for her support. *149 The alleged correspondence was not produced; it is not in evidence. Petitioner did not obtain from this Court any subpoena duces tecum to Madeleine to produce letters, and none is in his possession. Petitioner did not obtain a subpoena to Madeleine to appear at the trial to give testimony. She did not give testimony in this case. This case does not come within the rule of , which was followed in , because petitioner has failed to establish by competent evidence the existence of a written agreement consisting of letters, signed by him, to his former wife. This case does not come within the rule of . In that case there was a written document, or agreement, which was executed before the taxpayer's husband obtained a Nevada divorce, and it remained in effect at all times pertinent. The agreement in the Pease case was held to be incident to the divorce, although it was not mentioned in the divorce decree. This case does not come within the rule of . It is concluded that petitioner has failed to prove the existence *150 of a written agreement, consisting of informal correspondence signed by him, which was entered into with his former wife prior to his divorce and which was incident to the divorce within the provisions of sections 22(k) and 71. He is not entitled, therefore, to deductions under sections 23(u) and 215(a) for payments of $175 per month to Madeleine for her support. Petitioner was obligated, under the decree of divorce, to pay Madeleine $150 per month for the support of his children. Deductions for such payments specifically are not allowed by sections 22(k) and 71. Petitioner is not entitled to deductions for payments of $325 per month, or $3,900 per year. Respondent now concedes that he erred in disallowing a deduction of $400 for meals expenses in 1954 while petitioner was on duty in the Korean War Zone. Therefore, a Rule 50 computation is necessary. Decision will be entered under Rule 50.